## JOSIAH ELLIOTT *vs.* ELLEN ELLIOTT.

*Construction of the Act of 1872, ch. 272—Divorce a vinculo matrimonii—Act of 1872, ch. 272, not an Ex post facto law—Retrospective laws.*

The Act of 1872, ch. 272, provides that "in all cases where a divorce *a vinculo matrimonii* is decreed for adultery or abandonment, the Court may, in its discretion, decree that the guilty party shall not contract marriage with any other person during the life-time of the other party, in which case the bond of matrimony shall be deemed not to be dissolved as to any future marriage of such guilty party, contracted in violation of such decree, or in any prosecution on account thereof." This Act went into operation on the 1st of June, 1872. On the 24th of February, 1872, a wife filed her bill of complaint, praying for a decree *a vinculo matrimonii* from her husband on account of his adultery. The acts of adultery charged were proved to have begun in July, 1871, and to have continued up to the time of taking the evidence, the 8th of March, 1872. The Court, on the 21st of June, 1872, passed a decree divorcing the parties *a vinculo matrimonii;* and in virtue of the discretion conferred by the Act of 1872, ch. 272, further adjudged that the defendant, the guilty party, should not contract marriage with any other woman during the life-time of the complainant, &c. On appeal by the defendant, it was HELD :

That the Act of 1872, ch. 272, applied to *all cases* where a divorce *a vinculo* for the causes mentioned, should be decreed after the Act went into effect, and as the Act went into effect prior to the passage of the decree, the case was clearly within the operation of the Act.

The Act of 1872, ch. 272, is not an *ex post facto* law, but such as the Legislature had the constitutional power to enact.

An Act of Assembly is not invalid merely because it is retrospective in its terms, or is made applicable to pre-existing or pending cases Such laws are valid and operative, unless they are obnoxious to the objection that they impair the obligation of a contract; or are *ex post facto* laws, within the meaning of the Constitution of the United States, and the provisions of the Maryland Declaration of Rights, which impose restrictions upon the Legislative power.

Elliott vs. Elliott.

APPEAL from the Circuit Court for Anne Arundel County, in Equity.

The bill of complaint in this case was filed on the 24th of February, 1872, by the appellee, and prayed for a divorce a vinculo matrimonii, from her husband, the appellant. The parties, who were colored persons, were married in February 1871; and the bill charges that in August of that year, the appellant deserted and abandoned the appellee, and cohabited with another woman, with whom he committed frequent acts of adultery. The husband answered admitting the allegations of the bill; and they were fully sustained by the proof in the cause. The woman herself, with whom the husband cohabited, was made a witness in the case, and proved that he then lived with her as if he were her husband. On the 21st of June, 1872, the Court, (MILLER, J.,) passed a decree divorcing the complainant and the defendant a vinculo matrimonii, for and on account of the adultery of the latter; and being of opinion that it was a proper case for the exercise of the discretion vested in the Court by the Act of 1872, ch. 272, further decreed that the guilty party should not contract marriage with any other woman during the life-time of the complainant, and the bond of matrimony should not be deemed to be dissolved as to any future marriage of the said defendant, contracted in violation of the decree and of said Act of Assembly, or in any prosecution on account of such marriage.

From this decree the defendant appealed.

The cause was argued by *Ferdinand Mullan* and *James H. Hodges*, for the appellant.

And was decided by BARTOL, C. J., BOWIE, BRENT, GRASON, ALVEY and ROBINSON, J.

The Act of 1872, ch. 272, was not intended to be retrospective, and it is not to be doubted, as a rule of universal

application, that "*no statute will be construed to be retrospective, unless such a purpose be plainly expressed;*" and when the interpretation "*is doubtful in respect to preexisting contracts,*" it will be construed as operating prospectively. *Baugher vs. Nelson*, 9 *Gill*, 303; *State, &c. vs. Norwood, et al.*, 12 *Md.*, 206; *Clark vs. Mayor and C. C. of Balto.*, 29 *Md.*, 283; *Medford vs. Learned*, 16 *Mass.*, 216; *Cooley's Constitutional Limitations*, 370; *Perkins vs. Perkins*, 7 *Conn.*, 558.

It is true that the Legislature has the power in certain cases to pass retrospective laws, but then the intent must be too clear and plain to be mistaken. Is the language of the Act of 1872 too plain to be mistaken? The Act was passed on the 1st of April, but did not go into effect until the 1st of June following. If it was intended to be retrospective, why not have given it force from the date of its passage? Does it not seem as if the Legislature intended to give warning before it put into operation the new rule?

By reference to the facts of the case, it appears that the testimony was closed nearly two months before the Act became operative, and the offence for which this Act is invoked was committed prior to the 8th of March 1872—more than three months before the law was in force. Had the cause been submitted to the Court on the 11th of April, the day the commission was returned, no such decree at that time could have been passed. It is thus made manifest that the cause was governed and controlled by a law which did not exist when the cause was begun. When an action, either at Law or in Equity, has once begun, laws made subsequent to the beginning of the proceedings cannot control that action, no matter to what stage the cause has progressed; the same principle must with stronger force apply when the testimony in the cause has been closed and the commission returned. *Broom's Legal Maxims*, 35, 36.

Elliott *vs.* Elliott.

If this law is intended to be retrospective, and was for the purpose of punishing the adulterer for acts, committed before its passage, it violates both the Constitution of the State and the United States. *Art.* 17 *of the Declaration of Rights; Art.* 2, *sec.* 10, *clause* 1, *of the Constitution of the U. S.* The Act in question is an *ex post facto* law. What was the object of the Legislature in passing the law? Was it not intended as a punishment to deter parties from forgetting their marriage vows? And when it operates upon what has already been done, it becomes an *ex post facto* law.

The Court, by its decree, possessed no authority to prevent any future marriage between the appellant and another party, because, the law in operation at the time the alleged offence was committed, did not prohibit the appellant from entering into a matrimonial contract. The Act in giving the Courts the power of absolving one party from his matrimonial obligations, and prohibiting the other from contracting any future marriage, is, so far as this particular case is concerned, *ex post facto*, because it aggravates and makes greater the offence than it was when committed. It also *changes the punishment* and inflicts *greater punishment* than the law annexed to the crime when committed; and it alters the situation of the appellant, to his disadvantage, in relation to the alleged offence or its consequences. *Calder and Wife vs. Bull and Wife,* 3 *Dallas,* 390; *United States vs. Hall,* 2 *Wash. C. C. Rep.,* 366; *Locke vs. New Orleans,* 4 *Wall.,* 177; *Cummings vs. State of Missouri,* 4 *Wall.,* 277, 325; *Watson, et al. vs. Mercer,* 8 *Peters,* 88; *Carpenter et al. vs. Comm. of Penn.,* 17 *Howard,* 456; *Story on the Constitution,* 266.

No appearance for the appellee.

Elliott *vs.* Elliott.

Bartol, C. J., delivered the opinion of the Court.

The only question presented by this appeal is whether the Act of 1872, ch. 272, applies to the case. That Act provides that "in all cases where a divorce *a vinculo matrimonii* is decreed for adultery or abandonment, the Court may, in its discretion, decree that the guilty party shall not contract marriage with any other person during the life-time of the other party ; in which case the bonds of matrimony shall be deemed not to be dissolved, as to any future marriage of such guilty party, contracted in violation of such decree, or in any prosecution on account thereof.'' The Act was passed on the 1st day of April, and went into operation on the 1st day of June, 1872. The decree was passed on the 21st day of June of the same year.

The bill was filed in February, 1872, the acts of adultery charged against the appellant, were proved to have begun in July, 1871, and to have continued till the time of taking the evidence, the 8th of March, 1872.

The appellant does not complain of the divorce ; but contends that the Circuit Court erred in decreeing that he "shall not contract marriage with any other woman during the life-time of the appellee.''

We are all of opinion that the discretion conferred by the Act of 1872, was properly exercised, and entirely justified by the proof in the record ; provided the case was within the operation of the Act. On this question a majority of the Court agree in opinion with our brother Miller, who decided the case in the Circuit Court, and think the decree ought to be affirmed.

The Act provides in terms, that the discretion may be exercised *in all cases*, where a divorce *a vinculo* is decreed for the causes mentioned.

The words of the law are full and comprehensive, embracing all cases, as well such as may have been instituted before the passage of the Act, as those which

may thereafter be brought; there is no exception of pending cases. It refers to the time of passing the decree, and being then in operation, it limits and defines the powers of the Court in passing the decree : and consequently applies to *all cases*, in which a decree may be passed after the Act comes in force.

This we take to be the plain meaning of the words of the Act, and consider it clear that this case falls within its operation. It only remains to consider the objections urged by the appellant's counsel to the law itself.

They have argued that the statute so construed, is invalid for the want of constitutional power in the Legislature to enact it.

Since the decision in *Baugher vs. Nelson*, 9 *Gill*, 299, it is settled in Maryland that an Act of Assembly is not invalid, merely because it is retrospective in its terms, or is made applicable to pre-existing or pending cases. Such laws are valid and operative, unless they are obnoxious to the objection, that they impair the obligation of a contract; or are *ex post facto* laws, within the meaning of the Constitution of the United States, and the provisions of our Declaration of Rights, which impose restrictions upon the Legislative power. The meaning and construction of these provisions have been well defined in *Calder vs. Bull*, 3 *Dallas*, 386; *U. States vs. Hall*, 2 *Wash. C. C. R.*, 366 ; *Ex parte Garland*, 4 *Wal.*, 333; and *Baugher vs. Nelson*, 9 *Gill*, 299.

It is upon this latter ground that the validity of the Act of 1872, has been assailed. It is said that it is *ex post facto*, because it operates to impose a new penalty, or punishment for acts committed before it was passed. That the restraint it authorizes the Court to impose upon the offending party, is in the nature of a penalty or punishment. But we think this argument is based upon an erroneous view of the nature of the law, and of the subject-matter to which it relates. It was passed as an

amendment to the 25th and 26th sections of Article 16 of the Code; and after repealing those sections, re-enacts them with amendments. Those sections are not penal in their nature; they simply prescribe a remedy by civil suit against a party who has violated his marital obligations. Before the Act of 1872 was passed, in a case like this, where the adultery was proved, the Court was empowered to pass a decree of divorce *a vinculo.*

The effect of such decree was completely to dissolve the marriage tie, and to place both parties in the same condition as if the marriage had never taken place. The decree was granted as a relief to the party injured; and though its effect was to free both parties from their marital obligations; that was merely the incidental consequence or effect of the decree, and by no means a vested right or remedy to which the offending party was entitled.

When the Legislature by the Act of 1872, authorized the Court in its discretion, to modify the decree in the manner therein prescribed, it did not impose any new punishment or penalty upon the adulterer, but simply withheld from him relief which he was never entitled to claim, and left him where he was before the decree was passed; under the disabilities of his marriage contract which before existed, and which are imposed, not by the Act of Assembly; but grow out of the marriage contract itself, into which he had voluntarily entered.

If the Act of 1872 had amended the pre-existing law, so as to declare that thereafter the Courts should not decree a divorce *a vinculo* for adultery; but a divorce *a mensa et thoro* only: it could hardly be successfully contended by the appellant, that he would be entitled to nsist upon *a divorce a vinculo;* because such was the law at the time the adultery was committed by him, or when the suit was instituted.

It seems to us that the power of the Legislature to change or modify the remedies of parties in such cases is unquestionable, and that this appeal ought not to be sustained.,

*Decree affirmed.*

(Decided 2nd July, 1873.)

ROBINSON, J., dissented.