TIPPING v. TIPPING.
No. 6585.

United States Court of Appeals for the District of Columbia.
Decided Feb. 3, 1936.

STEPHENS, Associate Justice, dissenting.

Bruce Aitchison, of Washington, D. C., for appellant.

Louis H. Mann and Frederic B. Warder, both of Washington, D. C., for appellee.

Jean M. Boardman, Martha Gold, and George C. Gertman, all of Washington, D. C., as amicus curiæ.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This case arises under the divorce laws of the District of Columbia.

By an act of Congress entitled, "An Act To establish a code of law for the District of Columbia," approved March 3, 1901, it was provided by section 966 that an absolute divorce could be granted only where one of the parties had committed adultery during the marriage; and that a legal separation from bed and board could be granted for drunkenness, cruelty, or desertion. The same section provided that marriage contracts might be declared void where either of the parties had a former wife or husband living and not lawfully divorced; or where the marriage was contracted during the lunacy of either party; or where either party was matrimonially incapacitated at the time of marriage and had continued so; and where either of the parties had not arrived at the age of consent to the contract of marriage. D.C. Code, § 964 et seq.; 31 Stat. 1189, c. 854 (D.C.Code 1929, T. 14, § 61 et seq.).

These provisions remained unmodified in the Code of the District until by an act of Congress approved on August 7, 1935 (49 Stat. 539, § 1), it was provided that section 966 of the former act should be and it was repealed, and "in lieu" thereof a corresponding section was enacted also to be known as "section 966."

The new section 966 provided that an absolute divorce or a legal separation from bed and board could be granted for adultery, or desertion for two years, or voluntary separation from bed and board for five consecutive years without cohabitation, or final conviction of a felony involving moral turpitude and sentence for not less than two years to a penal institution which is served in whole or in part. It was further provided in the substituted section that a legal separation from bed and board could be granted for cruelty, provided that where a final decree of divorce from bed and board theretofore had been granted or thereafter might be granted and the separation of the parties continued for two years after the date of such decree, the decree could be enlarged into a decree of absolute divorce, upon the application of the innocent spouse. The new section also contains provisions similar to those of the former act in respect to grounds for declaring marriage contracts to be void.

It may be repeated that under the law approved in 1901, supra, the sole ground for absolute divorce was adultery, and the grounds for divorce a mensa et thoro were drunkenness, cruelty, and desertion; whereas under the act of 1935 an absolute divorce could be granted for adultery, desertion for two years, voluntary separation from bed and board for five consecutive years without cohabitation, final conviction of a felony involving moral turpitude, and sentence for not less than two years to a penal institution which is served in whole or in part; and that a divorce a mensa et thoro could be granted for cruelty.

After the enactment of the act of August 7, 1935, to wit, on September 10, 1935, Elizabeth W. Tipping, the appellee, filed a bill in equity in the Supreme Court of the District of Columbia, setting out her marriage with the defendant therein on September 14, 1918, and their voluntary separation from bed and board on March 25, 1927, brought about by the failure of defendant adequately to provide for plaintiff and their children; and that plaintiff and defendant remained separated from bed and board without cohabitation for a period of more than five consecutive years thereafter and have so continued. Plaintiff prayed for an absolute divorce from defendant under the provisions relating to such separations in section 966 of the later enactment as above set out.

The defendant entered his appearance to the bill and joined in the prayer thereof. Whereupon, the court, acting under title 14, § 78, D.C.Code (1929), appointed a disinterested attorney to represent de-

fendant and "actively defend the case" on his behalf. The attorney so appointed thereupon filed a motion to dismiss the bill upon the ground that it failed to allege facts sufficient under existing laws to sustain plaintiff's prayer.

The lower court overruled the motion, whereupon a special appeal to this court was granted on application of defendant's attorney.

The question arising upon the appeal is whether under section 966 of the present act the plaintiff may be granted an absolute divorce because of the voluntary separation of the parties from bed and board without cohabitation for a period of more than five consecutive years all of which except one month occurred prior to the present enactment.

The appellant contends that voluntary separation from bed and board without cohabitation for the period of five consecutive years can serve as a basis for an absolute divorce only in case that such period of separation shall ensue after the date of the last enactment, that is to say after August 7, 1935, whereas in the present case although the separation had continued for eight consecutive years, only one month of it had occurred after the enactment of the present statute.

■■■ We do not agree with the appellant's contention. It has been held by the highest authority that marriage is an institution of society, creating a status which may be regulated and controlled by public law; that legislation affecting the institution or annulling the relation between the parties is not within the prohibition of the Constitution of the United States against the impairment of contracts, or against ex post facto laws. Maynard v. Hill, 125 U. S. 190, 8 S.Ct. 723, 31 L.Ed. 654.

In the exercise of such public authority statutes may be enacted applicable equally to past and future grounds for divorce.

It is said in 1 Bishop on Marriage, Divorce and Separation, § 1480:

"Divorce statutes concern the good order of society. If, contemplating the interest involved as public, it is for the public order and profit that marriage be dissoluble after the transpiring of a particular delictum it can make no difference what was the date of the delinquency, or whether, before or after the statute was enacted. Hence, when the legislative intent does not directly appear in the statutory words, they should be applied equally to past and future transactions."

In Sutherland on Statutory Construction, § 482, it is said:

"When statutory relief is prescribed for a cause which is continuous in its nature as * * * desertion for a certain time as a ground for divorce, if the cause continues after the statute goes into effect, the future continuance of the cause may be supplemented by the time it was continuous immediately before the act was passed to constitute the statutory period."

See, also, West v. West, 2 Mass. 223; Stevens v. Stevens, 1 Metc.(Mass.) 279; Phillips v. Phillips, 22 Wis. 256; Cole v. Cole, 27 Wis. 531; Long v. Long, 135 Minn. 259, 160 N.W. 687, L.R.A.1917C, 159; Hurry v. Hurry, 141 La. 954, 76 So. 160; Hurry v. Hurry, 144 La. 877, 81 So 378; Dowie v. Becker, 149 La. 160, 88 So. 777; Stallings v. Stallings, 177 La. 488, 148 So. 687; State v. First Judicial District Court, 53 Nev. 386, 2 P.(2d) 129, 1048; Schuster v. Schuster, 42 Ariz. 190, 23 P.(2d) 559.

We think that in the instant case a construction which would restrict the application of the act to conditions arising after its enactment would lead to incongruous and unintended results. The first act was repealed by the present one, consequently in such case no relief could be awarded because of acts or conditions preceding the repeal of the former act. Therefore in case of adultery committed prior to the present act, even though suit for divorce was commenced and was pending at the date when the former act was repealed, it would in effect be condoned by the statute and cease to be a ground upon which a divorce could be granted, and this notwithstanding the fact that such a ground is provided under the act of 1935. And in case of a marriage existing prior to the adoption of the present act, if one party be convicted of a felony and sentenced to the penitentiary for a term of two years or more and had entered upon the service of the sentence, it is not reasonable to believe that Congress should intend that in view of that condition if such imprisonment continued after the enactment of the new law, no remedy should be granted to the innocent spouse after the date of its enactment. In such case the act should be construed as retrospective in character. It is reasonable also to believe that if parties

to a marriage separated by agreement and continued such separation without cohabitation as in the present case for a period of more than eight consecutive years under the old law and one month under the new law, the actual status of the parties should be recognized and the separation be regarded as a ground for divorce rather than require that the separation should continue for four years and eleven months more before a divorce could be granted.

 Moreover, it is apparent that Congress intended by the enactment of 1935 to liberalize and enlarge the divorce laws of the District of Columbia, both as to existing and prospective conditions. It is a matter of public history that for years residents of the District were removing temporarily to other jurisdictions where the divorce laws were more liberal and there securing divorces and then returning to their homes in the District. This gave rise to much litigation within the District and to situations productive of injustice and injury to innocent parties, often involving questions concerning the legitimacy of children. This condition was exemplified in the case of Holt v. Holt, 64 App.D.C. 280, 283, 77 F.(2d) 538, 541, and in other cases therein cited. In the Holt Case we said:

"Since control of the matrimonial status lies in the law of the domicile of the parties to the marriage, the decrees so casually granted by a few of our states to sojourners, tourists, and birds of passage have no extraterritorial validity or effect in the District of Columbia under the Constitution. And while it is probably true that a law of divorce like our own, which is based on adultery only, is now neither adequate nor appropriate to the life of the community, and tends to produce a train of perjury, bigamy, and bastardy, yet the constitutional rule is not to be relaxed by the courts, though the evil may be recognized and corrected by the Legislature whenever it sees fit to do so."

This condition, together with the foregoing description of it, was considered by the Congressional Committees who reported the bill in Congress. We feel assured that it was the intention of Congress that a liberal construction should be placed upon the terms of the enactment which we are now considering.

For these reasons, we affirm the decision of the lower court with costs, and remand the cause to that court for further proceedings consistent herewith.

Affirmed.

STEPHENS, Associate Justice.

I dissent. Prior to August 7, 1935, the law permitted absolute divorce from the bonds of marriage in the District of Columbia on the ground of adultery only, and permitted divorce from bed and board upon the ground of drunkenness, cruelty or desertion only. The 74th Congress, First Session, in Public No. 252, passed a statute effective August 7, 1935, establishing, in addition to adultery, various other grounds for divorce, and providing for the enlargement of a decree of divorce from bed and board where separation has continued for two years thereafter into a decree of absolute divorce. The material provisions of that statute are:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That sections 966 and 968 of chapter 22 of the Act of Congress entitled 'An Act to establish a Code of Law for the District of Columbia,' approved March 3, 1901, as amended, are hereby repealed, and in lieu of section 966 the following section is hereby enacted, to be known as 'section 966':

"'Sec. 966. CAUSES FOR DIVORCE A VINCULO AND FOR A DIVORCE A MENSA ET THORO.—A divorce from the bond of marriage or a legal separation from the bed and board may be granted for adultery, desertion for two years, *voluntary separation from bed and board for five consecutive years without cohabitation*, final conviction of a felony involving moral turpitude and sentence for not less than two years to a penal institution which is served in whole or in part. A legal separation from bed and board may be granted for cruelty: *Provided*, That where a final decree of divorce from bed and board heretofore has been granted or hereafter may be granted and the separation of the parties has continued for two years since the date of such decree, the same may be enlarged into a decree of absolute divorce from the bond of marriage upon the application of the innocent spouse * * *.'" (Italics supplied.) 49 Stat. 539, § 1.

In the instant case the plaintiff below, appellee here, Elizabeth W. Tipping, filed suit for divorce on September 10, 1935, un-

der the new statute, alleging more than five consecutive years voluntary separation from bed and board without cohabitation as a ground—of which period approximately one month followed the date of the effectiveness of the act, August 7, 1935, and the necessary balance of four years and approximately eleven months preceded the same. The single question in the case, in my view, is whether or not that preceding period can be considered in order to make up the five-year period required. Or, to put it otherwise, can the statute, in respect of this ground of divorce, be given retrospective effect? That such will be its effect if the period antedating it may constitute a portion of the factual predicate for divorce cannot be debatable, because the effect will then be to attach a consequence or quality of legal wrongfulness, in respect of the marriage relation, to the four years and. eleven months separation preceding the statute which that portion of the separation did not originally have. The question of retrospective effect cannot, in my mind, be avoided by any form of words, such as is suggested by the statement in one of the briefs in support of the plaintiff's case, that the statute applies only to "existing facts and conditions."

The settled and familiar rule of construction applicable to statutes in general is that, in the absence of a clearly expressed or necessarily implied intention to the contrary, they operate prospectively only. In Fullerton-Krueger Lumber Co. v. Northern Pacific R. Co., 266 U.S. 435, 437, 45 S. Ct. 143, 144, 69 L.Ed. 367, the United States Supreme Court, basing its decision upon the statement, said:

"It is a rule of construction, that all statutes are .to be considered prospective, unless the language is express to the contrary, or there is a necessary implication to that effect. [Authorities cited.]"

And in Miller v. United States, 294 U. S. 435, 439, 55 S.Ct. 440, 442, 79 L.Ed. 977, in which Fullerton-Krueger Lumber Co. v. Northern Pacific R. Co. was cited with approval, the Court put it that:

"The law is well settled that generally a statute cannot be construed to operate retrospectively unless the legislative intention to that effect unequivocally appears." See also, Lewis' Sutherland, Statutory Construction (2d Ed.) vol. II, §§ 641, 642,

pp. 1157, 1158. In the latter the author states:

"The general rule is that statutes will be construed to operate prospectively only, unless an intent to the contrary clearly appears. It is said 'that a law will not be given a retrospective operation, unless that intention has been manifested by the most clear and unequivocal expression.'" [Authorities cited.]

This rule is applicable to divorce statutes. This is well illustrated in Barrington v. Barrington, 200 Ala. 315, 76 So. 81. Therein the Alabama Code (Code 1907, § 3795, as amended by Acts 1915, p. 370) authorizing divorce in favor of the wife upon the ground of actual violence or reasonable apprehension thereof was amended to allow divorce also "when the wife without support from him has lived separate and apart from the bed and board of the husband for five years next preceding the filing of the bill * * · *·"

A complaint filed after the amendment relied upon a separation, the greater part of which preceded the amendment. The court held the statute not applicable retrospectively,[1] saying:

"But a statute which gives a new legal effect to conduct or conditions occurring or existing prior to its enactment, thereby imposing upon any person unanticipated disabilities or alterations of legal status, is retrospective in a sense which is odious to the law, and, as to such operation, is strongly disfavored by the courts, even though it does not offend the Constitution by impairing the obligation of a contract or by creating a crime or punishment ex post facto. This disfavor has everywhere found expression in a rigorous rule of construction which denies retroactive effect to such a statute unless by its express terms, or by unmistakable implication, the Legislature must have so intended." 200 Ala. 315, 316, 76 So. 81, 82.

See also, exemplifying the general rule as applied to divorce statutes: Pierce v. Pierce, 107 Wash. 125, 181 P. 24; Burt v. Burt, 168 Mass. 204, 46 N.E. 622; Dickinson v. Dickinson, 7 N.C. (3 Murphey) 327, 9 Am.Dec. 608.

In general where the courts have given a retrospective effect to divorce statutes, they have done so not upon the theory that

---

[1] The court so held notwithstanding the use of the present perfect tense, which, as will be seen below, is regarded by some courts as indicative of retroactive legislative intent.

to do so is orthodox, but upon the ground that the language of the particular statute involved indicated a legislative intent so to do. Thus in Schuster v. Schuster, 42 Ariz. 190, 23 P.(2d) 559, the legislature (Laws 1931, c. 12) had made it an additional ground for divorce:

"When for any reason the husband and wife have not lived or cohabited together as husband and wife for a period of five years or more."

The Arizona Revised Code 1928 (section 3038) had theretofore put the general rule of construction, above referred to, in statutory form by providing that:

"no statute is retroactive unless expressly so declared therein."

The court held the statute retroactive, but said:

"It is plain, however, from the language used in chapter 12 that the legislature intended it to apply to situations existing when it was passed, for it expressly states that a divorce may be granted when the husband and wife 'have not lived or cohabited together' for a period of five years. This clearly refers to the past as well as to the future and brings the language expressly within the meaning of section 3038, supra. To accomplish this purpose it was not necessary that the legislature use the expression, 'this statute shall be retroactive,' or any similar one. Any language that shows a legislative purpose to bring about this result is sufficient. [Authorities cited.]" 42 Ariz. 190, 199, 23 P.(2d) 559, 562.

Again in State v. First Judicial District Court, 53 Nev. 386, 2 P.(2d) 129, 1048, a statute (St.1931, c. 111) creating an additional ground provided that a divorce may be granted when the "husband and wife have lived apart for five consecutive years without cohabitation." Holding this retrospective in its application, the court said:

"It is the general rule, recognized by this court, that statutes are prospective only unless it clearly, strongly, and imperatively appears from the act itself that the legislature intended that it should be retrospective in its operation * * *. [Authorities cited.]" 53 Nev. 386, 390, 391, 2 P.(2d) 129, 1048.

And the court went on to say:

"While it is the general rule that statutes are to be given a prospective, rather than a retrospective, operation, like all other rules of interpretation it is indulged to give effect to the presumed and reasonably probable intention of the legislature, when the terms of the statute do not of themselves make the intention clear and certain, and cannot be invoked to change or defeat the intention when it is made obvious or manifest by the terms of the statute. [Authority cited.]

"We think the statute in question is clearly retrospective, as well as prospective. By its terms it went into effect on the day it was approved and it refers to married couples who 'have lived apart for five consecutive years without cohabitation.' We are at a loss to see how the legislature could more clearly, strongly, and imperatively have expressed its intention that the act should be given a retrospective effect. The words 'who have lived apart' must be given their plain ordinary meaning." 53 Nev. 386, 391, 2 P.(2d) 129, 1048.

Any cases which, in the absence of express language clearly indicating retrospective intent, give statutes retrospective effect, are, in my view, not representative of the current of authority.

I think there is no language in the statute involved in the instant case which either expressly or by necessary implication indicates an intention on the part of the Congress that, in respect of the particular ground of divorce here involved, the act was to be retroactive. The statute says simply:

"A divorce * * * may be granted for * * * voluntary separation from bed and board for five consecutive years without cohabitation * * *."

There is here no use of the present perfect tense such as was seized upon by the courts in the cases just discussed. The only words in the statute indicative of a Congressional intent of retrospective effect are those in the proviso reading:

"That where a final decree of divorce from bed and board *heretofore has been granted or hereafter may be granted* and the separation of the parties has continued for two years since the date of such decree, the same may be enlarged into a decree of absolute divorce * * *. [Italics supplied.]"

The use of such words in the proviso in respect of the type of separation therein referred to and the omission to use them in respect of the five years voluntary sep-

aration which is the subject of this case evidences, I think, that, at least as concerns these two types of separation as grounds of divorce, the legislative intent was retrospective in respect only of the one set out in the proviso.

With respect to the authorities said to support a retrospective application of the statute: It is true that in Bishop on Marriage, Divorce and Separation, vol. 1, § 1480, at page 612. it is stated that:

"when the legislative intent does not directly appear in the statutory words, they should be applied equally to past and future transactions."

This, however, is but the view of the author, because he also states:

"But the authorities on the question are divided."

The citation from Lewis' Sutherland, Statutory Construction, § 482, vol. II (2d Ed.) § 647, pp. 1225, 1226, to the effect that:

"Where statutory relief is prescribed for a cause which is continuous in its nature, as * * * desertion for a certain time as a ground for divorce, if the cause continues after the statute goes into effect, the future continuance of the cause may be supplemented by the time it was continuous immediately before the act was passed to constitute the statutory period."

is as appears therefrom as well as from the section heading, "Remedial statutes may apply to past transactions and pending cases," in potential rather than indicative form. I have no quarrel with the statement if it means that the legislature may pass a retroactive statute. But if it means to assert as a general rule that divorce statutes are, in the absence of express words or necessary implication, to be given retrospective application, then I think the statement not correct; and this was the view of the court in Barrington v. Barrington, supra, where comment upon the same quotation from Lewis' Sutherland is made. West v. West, 2 Mass. 223, while in its holding contrary to the general rule of prospective operation of statutes generally, is not, in respect of a newly created ground of divorce, in point on its facts. There, under an early statute, if a woman received a divorce for the cause of adultery, she was entitled to her dower in the lands of the husband in the same manner as if he were dead. A later act empowered the court decreeing divorce to assign her in addition all the personal estate which the husband had received by reason of the marriage, or such part thereof as was reasonable and just. This act was held applicable to decrees entered thereafter, irrespective of the date of the adultery. Thus the case holds nothing with reference to a new ground of divorce. In Stevens v. Stevens, 1 Metc. (Mass.) 279, a husband filed action under a statute making desertion a ground for divorce from the bonds of matrimony. In abatement the wife pleaded a previous suit brought by the husband under an earlier statute making the same period of separation a ground of divorce from bed and board only. It was held that the plea was bad because under the later statute there arose a new and distinct substantive right not theretofore existing. The case thus holds merely that a cause of action for divorce from bed and board is not identical with one for divorce from the bonds of matrimony. The case holds nothing concerning retrospective application of statutes. In Phillips v. Phillips, 22 Wis. 256, and Cole v. Cole, 27 Wis. 531, retrospective application was made of a statute establishing voluntary separation for five years as a ground for divorce; but the statute (Laws 1866, c. 37) was in the words:

"*Whenever* the husband and wife *shall have voluntarily lived* entirely separate for the space of five years next preceding the application for divorce. [Italics supplied.]"

"Whenever" clearly includes any point in the stream of time. It is to be admitted that in Cole v. Cole, the court said:

"There is nothing in the language of this statute which would seem to require that the five years' separation must have occurred after the law took effect, and we must presume that it was intended to apply to present separations as well as future ones." 27 Wis. 531, 534.

But this statement was of necessity made in the light of the words of the statute. In Hurry v. Hurry, 141 La. 954, 76 So. 160, and Hurry v. Hurry, 144 La. 877, 81 So. 378, and Dowie v. Becker, 149 La. 160, 88 So. 777, all involving the same statute (Act No. 269 of 1916, § 1), the words given retrospective application were in the present perfect tense. They permitted divorce:

"when married persons *have been living* separate and apart for a period of seven years or more * * *. [Italics supplied.]"

State v. First Judicial District Court, and Schuster v. Schuster, have been discussed above, where it was pointed out that the decisions were expressly rested upon the proposition that the words of the statutes in question referred to the past.[2] In Stallings v. Stallings, 177 La. 488, 148 So. 687, a statute had provided that where one spouse obtained a divorce from bed and board, such spouse could commence suit for divorce from the bonds of matrimony at the end of a year, whereas the other could not do so until the expiration of two years. A later enactment reduced the latter period to one year and sixty days. A wife had obtained a divorce from bed and board before the passage of the second act. After its passage, but in less than two years after the judgment of separation from bed and board, the husband brought suit for divorce from the bonds of matrimony. His suit was held proper. This in a sense gave retrospective application to the second statute, in that under the first the wife was protected for the full two years against the commencement of a suit for divorce from the bonds. But the case is not in point in respect of the instant situation, because the second statute did not create a new substantive ground of divorce. The statute was remedial solely, and the court said:

"Remedial statutes and statutes governing procedure apply to all actions brought subsequent to their promulgation. [Authority cited.]" 177 La. 488, 496, 148 So. 687, 689.

The present District of Columbia divorce statute is not remedial in the sense of the statute ·in the Stallings Case, i. e., in the procedural sense. It is remedial only in the general sense of "remedying" the disparity between the District of Columbia divorce law and the divorce laws of other jurisdictions. The Stallings Case was also rested upon the broad ground that there is no constitutional prohibition against retroactive construction of a statute affecting marital status. This is not to be disputed. The question here is not whether the Congress could pass a retroactive act, but whether it did. In Long v. Long, 135 Minn. 259, 160 N.W. 687, L.R.A.1917C, 159, a statute had established "Sentence to imprisonment in the state prison or state reformatory [i. e., the *Minnesota* prison or

reformatory] subsequent to the marriage" (Rev.Laws 1905, § 3574) as a ground of divorce. The defendant was sentenced to imprisonment in a *Michigan* penitentiary. Thereafter the Minnesota statute was amended to read "Sentence to imprisonment in *any* state prison or state reformatory subsequent to the marriage." (Italics supplied.) Laws 1909, c. 443, § 1. In a suit by the wife brought after the amendment, the latter was held applicable. The court rested the case in part upon the proposition, which again is not to be disputed, that it is within the power of the legislature to pass retroactive statutes, and quoted the statement of Bishop above discussed. But the court went on to state that it was doubtful that there was room for construction or for the application of the doctrine set forth in Bishop. The court said:

"The meaning of the language seems plainly to indicate that sentence to imprisonment in any state prison or state reformatory, as a cause for divorce is limited as to time only by the provision that the sentence must be one imposed after marriage of the parties." 135 Minn. 259, 261, 160 N.W. 687.

Thus the court, it seems, largely rested the case upon the proposition, which is not at all disputed, that where the words of the statute clearly indicate a legislative intent of retroactivity, then that effect will be given. It is to be further commented upon the Long Case that in only a limited sense did the second statute operate to attach a new quality or consequence to past conduct. The essence of the ground of divorce involved was not *place,* i. e., the state of imprisonment, but the *fact* of sentence to imprisonment.

I am obliged to disagree with the view expressed in the majority opinion "that in the instant case a construction which would restrict the application of the act to conditions arising after its enactment would lead to incongruous and unintended results." This is based upon the proposition that since the previous District of Columbia statute is repealed and the present statute enacted "in lieu" thereof, no divorce upon the ground of adultery committed prior to the present act could be granted if the act is given merely a prospective application, and this notwithstanding the fact that adultery was a ground of divorce under the

---

[2] The words in the Schuster Case were "have not lived or cohabited together," and in State v. First Judicial District Court were "have lived apart," i. e., words again in the present perfect tense.

previous statute and is also under the new one. This reasoning seems to me not supportable: It assumes that a statute must be construed either to operate prospectively as a whole or retrospectively as a whole, whereas this is not necessarily true. It might well be decided, if a case involving adultery were before us—and I think it unnecessary, and inadvisable, to decide in this case what will be the effect of the statute when applied in a case involving adultery —that the statute does operate retrospectively in respect of adultery even though the court had previously decided, as I think it should in this case, that it does not so operate in respect of five years voluntary separation: this because the reason for the general rule against retrospective operation would not exist in respect of adultery. As above pointed out, the reason for that rule is that such operation attaches "a new legal effect to conduct or conditions occurring or existing prior to its enactment, thereby imposing * * * unanticipated disabilities or alterations of legal status." Since adultery was already a ground for divorce in the District, it would not be true that the present statute, merely because it repealed the previous one, attaches a new "legal effect to conduct * * * occurring * * * prior to its enactment." In respect of five years voluntary separation as a ground for divorce, the present statute is as if there never had been a previous statute, and therefore the reason for the rule against retrospective operation of statutes persists, because the act does attach "a new legal effect to conduct or conditions occurring or existing prior to its enactment." Whether nonretroactive construction of the statute in this case in reference to voluntary separation for five years as a ground for divorce will necessitate nonretroactive construction of "final conviction of a felony involving moral turpitude and sentence for not less than two years to a penal institution which is served in whole or in part" as a ground—another asserted incongruity mentioned in the majority opinion—is a matter which, in my view, will best be determined when it arises and is fully argued before us. "Sufficient unto the day is the evil thereof." And even if this court should decide, when the question arises, that the clause last mentioned should be given retrospective effect, it is to be noted with reference to "incongruous and unintended results" that what results were intended by the act is the very question in the case; and under the general rules of construction which I think are the law, unless the statute, by clear words or necessary implication, gives evidence of retroactive intent on the part of the Congress, any resultant incongruities are the responsibility of that body and not of the court.

It is the policy of the law to favor marriage and the continuity of the marriage relation. Retroactive construction of the statute in respect of the ground of divorce here under consideration does the contrary. Past conduct not theretofore possessed of the quality of legal wrongfulness in respect of constituting a ground of divorce suddenly, upon the going into effect of the statute, confronts the parties as a basis for legal destruction of their marriage relation. Had the parties here known five years ago that voluntary separation if continued for five years would ripen into a ground for divorce, they might have given additional thought to the obligations of marriage and become reconciled. Had Congress desired by this statute to attach a quality or consequence of legal wrongfulness to a past voluntary separation theretofore innocent in respect of ground for divorce, it could as easily and clearly have done so by the use of words as it did in the proviso with reference to the enlargement of a decree of separation from bed and board into a decree of divorce from the bonds of matrimony. It did not do so.

I do not disagree with the proposition of the majority that Congress intended by the present statute "to liberalize and enlarge the divorce laws of the District of Columbia * * *." But whether it was the intention of Congress to do so [to continue the proposition of the majority] "both as to existing and prospective conditions" is the very question in the case. The present enactment does "liberalize and enlarge the divorce laws of the District" in the sense that it puts them in substance upon a parity with the laws of other jurisdictions so far as grounds of divorce are concerned. But Congress may well have regarded it as both unnecessary and unwise, in the process of liberalization, in respect of voluntary separation for five years as a ground of divorce, to characterize as now legally wrongful conduct not so heretofore, and thus to deny to parties—husband and wife

—the dissuasion from wrongful conduct which knowledge of its wrongfulness when entered upon would have afforded.

I am of the view that neither by express words nor by necessary implication did the Congress indicate an intention, in respect of the ground of divorce here under consideration, of retrospective liberalization.